### THE CRETAN.

#### (District Court, D. Maryland. May 26, 1908.)

COLLISION—SCOW LYING IN SHIP CHANNEL AT NIGHT—INSUFFICIENT LIGHTS.

A steamship, proceeding cautiously through a channel at night past an anchored dredge at a speed only sufficient to give her steerage way, *held* not in fault for a collision with a loaded scow, 125 feet long, which had been cast off by the dredge and had drifted so as to extend into the channel in front of it for 145 to 165 feet, with no one on board and a light only on the end next the dredge, which was not not readily distinguishable from other lights on and near the dredge.

In Admiralty. Suit for collision.

Arthur D. Foster, for libelant.

Daniel H. Hayne, for respondent.

MORRIS, District Judge (orally). On a dark night the loaded scow was turned loose from the dredge and shot out to the southeastward. The flood tide carried the scow up into the channel and off the easternmost side of the dredge, so that there was a space between the nearest point of the scow to the nearest part of the dredge of from 20 to 40 feet. The scow was 125 feet long, so that the easternmost corner of the scow projected into the channel from 145 feet to 165 feet. The light on the scow, if there was a light, was on the end nearest to the dredge, and there was no light upon the end which projected out into the channel. The light, if it was there, was placed where it could not be readily seen from the approaching steamer, for the reason that there were numerous lights on the dredge, and there were 12 stake lights in the water running out from the easternmost end of the dredge. There was no one on the drifting scow. She had only 2 feet freeboard and her upper surface was wet mud, so that she was hardly distinguishable in the darkness of the night from the water itself.

I am satisfied that the Cretan was proceeding very slowly, and at the time of the collision her engines had been stopped for eight or ten minutes, from a point about a quarter of a mile from the dredge, in order that she might pass the dredge at a very slow rate of speed. I find that the Cretan was on her proper side of the channel, and was not navigating imprudently close to the dredge. Considering that the steamer was approaching, if it was necessary for those in charge of the dredge to let the scow drift into the channel as she did, the least precaution that they should have taken would have been to have had a man on the scow with a light to wave to the approaching steamer, and the dredge should have sounded danger signals with her whistle.

Everything connected with the navigation of the Cretan indicates great caution on her part, and the slowest speed consistent with steerage way. I am satisfied that the collision was occasioned by the fact that the scow was allowed to drift out into the channel without any one on board, and without any light on the end which extended into the channel. The only thing the Cretan could have done, which she did not do, was to have reversed her engines; but, as she had a right-hand screw, to have reversed would have turned her bow towards the scow. The master's judgment was that his best chance to clear the scow was not to reverse, but to starboard his helm, and I think this, under all the circumstances, was a prudent maneuver and was nearly successful. That those on the Cretan did not see the scow until about 50 feet from her is not, under all the circumstances, to be attributed to the steamship as a fault.

I do not find any fault on the part of the steamship Cretan, and the libel must be dismissed.